

U.S. Department of Justice

United States Attorney
Eastern District of New York

AES:DEL/APW/JKW/JBD  
F. #2020R00851

271 Cadman Plaza East  
Brooklyn, New York 11201

January 12, 2023

By ECF and E-mail

The Honorable Taryn A. Merkl  
United States Magistrate Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:  United States v. Martial H. Amilcar and ▬▬▬▬  
            Criminal Docket No. 23-18 (PKC)

Dear Judge Merkl:

      The government respectfully submits this letter in support of its request that the Court enter permanent orders of detention against defendant Martial H. Amilcar ("Amilcar"), also known as "Drippy," ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ in the above-captioned matter.[1]  As set forth below, the defendants are high-ranking members of the Hyena Crips, a violent criminal enterprise operating primarily in Brooklyn, New York.  Martial H. Amilcar ▬▬▬▬▬▬▬▬▬▬▬▬ are charged in a one-count indictment filed in the above-captioned case with using a firearm during and in relation to the murder-in-aid-of racketeering of the fifteen-year-old victim, Samuel Joseph, in violation of Title 18, United States Code, Section 924(j).  This charge triggers the presumption that "no condition or combination of conditions will reasonably assure the appearance of the [defendants] as required and the safety of the community."  18 U.S.C. §§ 3142(e)(3)(A), (B).  For the reasons set forth below, the Court should enter permanent orders of detention.

---

     [1]     The indictment charges two defendants, one of which is still at liberty.  The government respectfully requests permission to file the instant letter with redactions to ensure that the defendant who is still at liberty does not learn that they are under indictment and to prevent them from fleeing justice to avoid arrest and prosecution.  See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect integrity of ongoing investigation can justify sealing).

I.   Background

    A.   The Defendants' Gang Membership

The defendants are high-ranking members of the Hyena Crips gang, a criminal organization composed mostly of individuals of Haitian descent. The gang mainly operates out of Brooklyn, with ties to Haiti. Hyena Crips members gain status by "putting in work," which means by committing crimes including fraud, robberies and acts of violence, including shootings. The government's investigation has shown that there have been numerous shootings, stabbings and assaults committed by members of the Hyena Crips against rival gang members, or those believed to be rival gang members, in particular, individuals believed to be members of the Haitian Loc ("HL"). This pattern of retaliatory violence has resulted in several murders and attempted murders in Brooklyn, between 2011 and the present.

    B.   The Murder of Samuel Joseph

On February 22, 2019, at approximately 3:34 p.m., Martial C. Amilcar, a fellow member of the Hyena Crips and the defendant Martial H. Amilcar's brother, was involved in a dispute with a member of the rival gang HL (the "HL Gang Member"). During this dispute, which occurred in front of a convenience store located on the 1300-block of Flatbush Avenue in Brooklyn—which is located in what is known as the "Little Haiti" section of Brooklyn—the HL Gang Member stabbed Martial C. Amilcar in the leg. After being stabbed, Martial C. Amilcar was driven to a relative's apartment building in Brooklyn (the "Relative's Apartment Building"). Surveillance video captured Martial C. Amilcar entering the Relative's Apartment Building with a noticeable limp and difficulty walking.

A short while later, as captured on surveillance video, the defendant Martial H. Amilcar arrived at the Relative's Apartment Building and later changed his clothing, putting on black sneakers, black pants, and a black Champion sweatshirt with a Champion logo visible on its front. Surveillance video shows the defendant Martial H. Amilcar outside of the Relative's Apartment Building speaking on his cell phone. Records of those calls indicate that the defendant Martial H. Amilcar contacted various members of the Hyena Crips. About eleven minutes later, at approximately 4:20 p.m., the ▮▮▮▮▮▮▮▮▮▮ arrived at the Relative's Apartment Building and entered its lobby with the defendant Martial H. Amilcar. Their entrance into the Relative's Apartment Building is depicted below:

2



Approximately six minutes later, at approximately 4:26 p.m., the defendants Martial H. Amilcar [REDACTED] left the Relative's Apartment Building together.

The defendants Martial H. Amilcar [REDACTED] then drove in a gray Nissan Altima to the vicinity of the HL Gang Member's residence on the 1300-block of Flatbush Avenue. After the defendants Martial H. Amilcar [REDACTED] arrived in the area, they paced around the block, as captured on numerous surveillance cameras and as shown below:



A short while later, surveillance video captured a gray Nissan Altima in the area. The defendants Martial H. Amilcar and [REDACTED] can later be seen on various surveillance videos exiting the gray Nissan Altima and continuing to walk on Flatbush Avenue.

3

The defendants Martial H. Amilcar and ▆▆▆▆ next approach an apartment building on the 1300-block of Flatbush Avenue (the "Victim's Apartment Building"). Surveillance video captured the defendants waiting outside the front door of the Victim's Apartment Building as the teenaged sister of HL Gang Member ("Sister") walked towards the building. The defendants appeared to have a short conversation with Sister before she opened the front door of the Victim's Apartment Building and entered. As Sister entered, her younger brother, Samuel Joseph—who was also the younger brother of HL Gang Member—was walking down an internal staircase towards the exit of the Victim's Apartment Building. Video surveillance from outside the Victim's Apartment Building captured the defendant Martial H. Amilcar pull out a gun and shoot into the stairwell of the Victim's Apartment Building at approximately 5:40 p.m. The defendant Martial H. Amilcar shot Joseph from close range three times, killing Joseph as he was about to exit the building. A representative from the New York City Office of the Chief Medical Examiner determined that Joseph died as a result of gunshots wounds to the head.

After the murder, as captured by surveillance video, the defendants Martial H. Amilcar ▆▆▆▆ ran from the Victim's Apartment Building, entered the gray Nissan Altima which they had earlier exited, and drove to the vicinity of the Relative's Apartment Building. At approximately 5:49 p.m., surveillance video shows the defendant ▆▆▆▆ returning to the lobby of the Relative's Apartment Building. At approximately 6:05 p.m., surveillance video shows the defendant Martial H. Amilcar returning to the lobby of the Relative's Apartment Building.

About sixteen minutes later, video surveillance shows that Martial C. Amilcar left the Relative's Apartment Building. The video depicts Martial C. Amilcar walking with difficulty.

C. The Defendants' Criminal Histories

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

The defendant Martial H. Amilcar is 26 years old and has the following four prior convictions, which are described below. Amilcar was on parole from a 2016 New York State conviction for attempted possession of a loaded weapon, which is described below, when he ▆▆ murdered Samuel Joseph.

- 2016 Attempted Possession of a Loaded Firearm

On September 1, 2014, Amilcar, who was 17 years old at the time, shot at three different individuals. He was chased by police officers for four blocks until he was apprehended. A loaded firearm with a defaced serial number was recovered at the location where Amilcar was apprehended. Amilcar was prosecuted as an adult by the Kings County District Attorney's Office. On June 27, 2016, Amilcar pled guilty to Attempted Criminal Possession of a Weapon in the Second Degree in Kings County Supreme Court and was sentenced to two years' incarceration and two years' post-release supervision.

4

- 2016 Aggravated Unlicensed Operation of a Motor Vehicle

On April 11, 2015, law enforcement officers stopped Amilcar, who was 19 years old at the time, while he was driving a car with a suspended license. On June 27, 2016, Amilcar pled guilty to Aggravated Unlicensed Operation of a Motor Vehicle in Kings County Supreme Court and received a youthful offender adjudication and 30 days' incarceration.

- 2016 Attempted Robbery with a Firearm

On May 11, 2015, Amilcar and another man approached a victim who was waiting for the bus. Amilcar and other man displayed a gun and demanded the victim's phone and chain. The victim tried to flee, but Amilcar and other man caught him, kicked him, and removed his chain and phone. On June 27, 2016, Amilcar pled guilty to Attempted Robbery in the First Degree in Kings County Supreme Court and received a youthful offender adjudication with one to three years' incarceration.

- 2021 Felon in Possession of a Firearm

On August 26, 2020, police officers attempted to conduct a traffic stop of a vehicle that Amilcar was driving. After initially pulling over, Amilcar sped away and led police on a ten-minute chase through Brooklyn. During this chase he drove over sidewalks and down the wrong way of one-way streets. He also threw a loaded gun out of the car window, which was recovered.

On September 11, 2020, the defendant was arraigned by Chief Magistrate Judge Cheryl Pollak on a complaint charging him with one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). See 20-MJ-793. The defendant was ordered temporarily detained. Then, on September 14, 2020, Magistrate Judge Ramon Reyes denied the defendant's bail application and entered an order of detention, finding, among other things, that "there is a serious risk that the defendant will endanger the safety of another person or the community." See 20-MJ-793, ECF Dkt. No. 8.

Amilcar ultimately pled guilty to being a felon-in-possession of a firearm and was sentenced to 23 months' incarceration and three years' supervised release. See 20-CR-378. Amilcar is currently on federal supervised release as a result of this conviction.

II. Legal Standard

The court "shall order" a defendant detained if it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government bears the burden of persuading the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). In cases such as this, however, where there is probable cause to believe a defendant has violated 18 U.S.C. § 924(c), there is a statutory presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C.

§ 3142(e)(3)(B). Even if a defendant can overcome that presumption, the special risk of dangerousness posed by defendants who have committed such crimes "remains a factor to be considered among those weighed by the district court." Mercedes, 254 F.3d at 436.

The government may proceed by proffer to establish facts relevant to detention determination. United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Id. at 542. As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers. See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, "including whether the offense is a crime of violence . . . or involves a minor victim or . . . firearm"; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including "whether, at the time of the current offense or arrest, the person was on probation [or] on parole"; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g). Specifically, in evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

III. Argument

No bail package will protect the community from the danger posed by the defendants. Because the defendants have been indicted for a crime which is punishable by death or by imprisonment for any term of years or for life, there is a presumption that there are no conditions of release that can reasonably assure their appearance and the safety of the community. See 18 U.S.C. § 3142(e)(3). The defendants cannot rebut such a presumption, regardless of any bail package that may be proposed, because each of the four factors set forth in Section 3142(g) clearly support findings of both dangerousness and risk of flight.

First, the defendants are charged with using a firearm during and in relation to the murder-in-aid-of racketeering of a fifteen-year-old boy. This heinous act "involve[d] a minor

victim . . . [and] a . . . firearm." 18 U.S.C. § 3142(g)(1). The evidence shows that the defendants planned, targeted, and carried out the premediated murder of Samuel Joseph.[2]

Second, the government's evidence is strong. The government has video surveillance evidence capturing the defendants each in unique clothing and traveling in a gray Nissan Altima. The defendants' whereabouts can be tracked from the Relative's Apartment Building to the Victim's Apartment Building and back again. The government's proof at trial will include, among other evidence, surveillance video footage, witness testimony, cell phone location data, and social media posts and communications.

Third, the defendants' history and characteristics weigh heavily in favor of detention. The defendants are active members and associates of a violent street gang. In addition, the defendant Martial H. Amilcar has a lengthy criminal history, which includes multiple instances of him possessing and using illegal firearms. Notably, Amilcar was on New York State parole at the time of the murder of Samuel Joseph.[3]

Fourth, the defendants cannot overcome the presumption that they are a danger to the community. There is perhaps no more serious offense than the premeditated murder of a child. In addition, membership in a violent enterprise like the Hyena Crips is itself an ongoing danger to the community. The Hyena Crips' ongoing, violent rivalry with the HL gang wreaks havoc on the community's residents.

In addition, the defendants each pose a significant risk of flight given the penalties associated with the crime charged and the strength of the government's case. The defendants are charged with an offense which is punishable by death or by imprisonment for any term of years or for life. When the incentives to flee are so strong, as here, no combinations of sureties and other restrictions can assure their appearance. See, e.g., United States v. English, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant was charged under § 924(c), faced a presumption against release, and a mandatory minimum sentence that incentivized fleeing); United States v. Henderson, 57 F. App'x. 470, 471 (2d Cir. 2003) (summary order) ("the presumption regarding flight risk has changed because Becton now faces a ten-year mandatory minimum sentence"). That remains true even if the defendants are on electronic surveillance and home confinement. See United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993) ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks omitted).

---

[2] In March 2019, the Kings County District Attorney's Office ("KCDA") indicted Martial C. Amilcar, who is the brother of defendant Martial H. Amilcar, for the murder of Samuel Joseph; however, the charges against Martial C. Amilcar were ultimately dismissed.

[3] Indeed, Martial H. Amilcar has a history of New York State parole violations. After his release from prison in April 2018 for his 2016 conviction for attempted possession of a loaded firearm, Amilcar's parole was revoked in December 2019 and he was re-incarcerated until March 19, 2020. On August 26, 2020, while still on parole, Amilcar was arrested for possessing a loaded firearm. Amilcar's parole was again revoked.



IV. Conclusion

For the foregoing reasons, the government respectfully requests that the court issue permanent orders of detention against the defendants Martial H. Amilcar and ▆▆▆ to ensure their return to court and the safety of the community.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
Devon Lash
Andrew P. Wenzel
Jessica K. Weigel
Joshua Dugan
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of the Court (by ECF)