```
 1                     UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF NEW YORK (BROOKLYN)

 3     UNITED STATES OF AMERICA,
                                        Case No. 1:23-cr-00018-AMD-3
 4              Plaintiff,

 5     v.                               Brooklyn, New York
                                        May 15, 2024
 6     MARTIAL C. AMILCAR, a/k/a        2:50 p.m.
       Hype,
 7
                Defendant.
 8

 9                  TRANSCRIPT OF ARRAIGNMENT HEARING
                  BEFORE THE HONORABLE JAMES R. CHO
10                   UNITED STATES MAGISTRATE JUDGE

11     APPEARANCES:
       For the Plaintiff:          Joshua B. Dugan, Esq.
12                                 U.S. Attorney's Office
                                   271-A Cadman Plaza East
13                                 Brooklyn, NY 11201

14     For the Defendant:          David Storobin, Esq.
                                   Storobin & Associates
15                                 299 Broadway
                                   Suite 1700
16                                 New York, NY 10007

17     Also Appearing:             Unknown, Pre-trial Services

18     Clerk:                      JVC

19     Court Recorder:             Electronic Sound Recording

20     Transcription Service:      Chris Hwang
                                   Abba Reporting
21                                 PO Box 223282
                                   Chantilly, Virginia  20153
22                                 (518) 302-6772

23

24     Proceedings recorded by electronic sound recording;
       transcript produced by transcription service.
25
```

**INDEX**

|  | Page |
|---|---|
| Motion, denied | 14 |
| Court's Ruling | 18 |

1          (Call to order at 2:50 p.m.)

2          THE CLERK:  Good afternoon, case number 23-CR-18,

3   United States v. Martial C. Amilcar.

4          Counsel, starting with the Government, please state

5   your appearances?

6          MR. DUGAN:  Good afternoon, Your Honor, Josh Dugan

7   for the Government.

8          MR. STOROBIN:  Good afternoon, Your Honor, David

9   Storobin for Martial Amilcar.

10          THE COURT:  All right, good afternoon, everyone.

11          Just to confirm, are you Martial Amilcar?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  All right, good afternoon.  I'm Judge

14   Cho.  How are you doing?

15          THE DEFENDANT:  I'm okay.

16          THE COURT:  All right, just pull the microphone a

17   little bit closer to you, so we can all hear you, okay?  All

18   right, Mr. Amilcar, the purpose of today's proceeding is to

19   make sure you understand your rights, what you've been charged

20   with, and determine whether you should be released on bail or

21   held in jail.

22          I want to remind you, you have the right to remain

23   silent.  You're not required to make any statement.  If you've

24   made a statement, you need not say anything further.

25          If you start to make a statement in the future, you

1    can stop at any time.  Keep in mind any future statement you

2    make today may be used against you.  Do you understand all

3    that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  All right, you also have the right to a

6    lawyer.  If you can't afford one, the Court will appoint one

7    for you.

8              All right, Mr. Storobin, I understand you're retained

9    counsel, correct?

10             MR. STOROBIN:  Yes, sir.

11             THE COURT:  Okay.  All right, I have in front of me a

12   superseding indictment.

13             At this time, Mr. Amilcar, I'm going to let you know

14   you've been charged by a grand jury with the following counts

15   and I will identify them for you.

16             Count 1 is racketeering.  And there are a number of

17   overt acts, which I will identify for you as well.  Overt act

18   5, conspiracy to commit identity fraud in connection with

19   unemployment benefits.

20             Overt act 6, conspiracy to commit identity fraud in

21   connection with the Small Business Administration.

22             Act 7, conspiracy to commit money laundering.

23             And Count 10, conspiracy to murder rival gang members

24   and associates.  Mr. Amilcar, have you received a copy of this

25   indictment?

```
 1                THE DEFENDANT:  Yes.
 2                THE COURT:  Okay, and have you had a chance to
 3    discuss these charges with your lawyer?
 4                THE DEFENDANT:  Yes.
 5                THE COURT:  Do you understand the charges against
 6    you?  Do you understand the charges against you?
 7                THE DEFENDANT:  Yes.
 8                THE COURT:  Yes?  Okay.
 9                All right, Mr. Storobin, at this time, does your
10    client want the charges read out loud or does he waive reading?
11                MR. STOROBIN:  He'll waive the reading.
12                THE COURT:  All right, and Mr. Amilcar, how plead to
13    charges, guilty or not guilty?
14                THE DEFENDANT:  Not guilty.
15                THE COURT:  All right, I'm note for the record that
16    Mr. Amilcar's pleading not guilty to the charges in the
17    indictment.
18                All right, Mr. Dugan, do we need consular
19    notification in this case?
20                MR. DUGAN:  No, Your Honor.
21                THE COURT:  Okay, all right.  Let me turn to the
22    Government.  Mr. Dugan, pursuant to Federal Rule of Criminal
23    Procedure 5(f), I remind the Government of its obligation under
24    Brady v. Maryland and its progeny to disclose to the Defense
25    all information known to the Government whether admissible or
```

1  not that is favorable to the Defendant and material either it
2  guilt or to punishment.
3           The Government must make good faith efforts to
4  disclose such information to the Defense has soon as reasonably
5  possible.
6           I'll be entering a written order that more fully
7  describes this obligation and the possible consequences of
8  failing to meet it.  And I direct the Government to review and
9  comply with that order.
10          Does the Government confirm it understands its
11 obligations and will fulfill them?
12          MR. DUGAN:  Yes, Your Honor, the Government confirms
13 it understands and will fulfill its Brady obligations.
14          THE COURT:  All right, at this time, is there a
15 proposed bail package, Mr. Storobin?
16          MR. STOROBIN:  I would like to make application, yes,
17 Your Honor.
18          THE COURT:  Okay, go ahead.
19          MR. STOROBIN:  Your Honor, my client has two prior
20 contacts that I'm aware of.  One of them, he was charged with
21 murder in the state courts right nearby.  At one point, there
22 was bail set at $25,000.  And despite the very high charge
23 against him, he showed up every single time in court.
24          He was on time.  He was cooperative.  He was
25 respectful.  He further showed up for DNA testing.

1             When the D.A.'s Office wanted to do a second
2   fingerprint of him, he consented to that and showed up to that
3   as well, even though he was out on bail.
4             There's reason to believe, and just to be clear, this
5   was a murder charge.  This wasn't like he was showing up for
6   stealing candy from a store.  This was a very serious charge.
7   And he made sure that he would show up in court and do what
8   he's supposed to do.
9             The second contact that he had was just recently a
10  week or two ago, I guess, where he was charged by the police
11  whom he knows who are literally out to get him.  And they
12  charged him with a felony.
13            And before the case hit the arraignment part, the
14  ECAB unit actually reduced it from a felony to a misdemeanor
15  charge and didn't ask for bail in that case.  So I expect a
16  very successful resolution in that case.
17            Now on the murder case, just to be clear, it was
18  eventually dismissed in the interest of justice.  That was the
19  statement made by the D.A.
20            But my client wound up spending eight months in jail
21  before he was able to post bail.  And there was a successful
22  lawsuit regarding that as well.
23            So my client's prior two contacts with the criminal
24  justice system have not been very just to say the least.  I
25  believe that there's no reason to suspect that he would not

1    show up in the future.  He has his dad here.  I'm pointing him
2    out in the background.  And he has his girlfriend sitting right
3    next to his dad.
4           And at every or -- I believe at every court
5    appearance that we've had in the past, his dad was also there
6    in the past.  They have a very close relationship.
7           My client has a job.  My client has -- his mother
8    lives near where the place where he works -- near the place
9    where he lives.  So we have a tight knit family that I've known
10   at this point for about five years.  Personally, I've known him
11   for about five years.
12          He has, you know, very good ties to New York.  I know
13   that it says that he has citizenship of Haiti, but he's a
14   resident of New York.  His family's in New York.  All his
15   immediate family's in New York.
16          The family and certainly my client are not wealthy.
17   They would not be able to post, you know, Bernie Madoff type of
18   bail.  They're very middle class or lower middle class family.
19          So I believe that under the circumstances, given his
20   financial station, given his record in the past, both the
21   reasons why he would get arrested and the fact that he would
22   not miss Court, I believe that gives us some comfort in knowing
23   that he will show up in Court and he will do as the Court
24   orders him to do.
25          So that's why I would like to ask that the Court set

1  no cash bail in this case in the amount which will be no more
2  than let's say $25,000.  That was good enough last time for him
3  to show up in Court every single time.
4              THE COURT:  I'm sorry, did you say how much?
5              MR. STOROBIN:  $25,000.
6              THE COURT:  Okay.  All right, Mr. Dugan, do you want
7  to be heard?
8              MR. DUGAN:  Yes, Your Honor.  The Government opposes
9  bail and asks that the Court order a permanent order of
10 detention on both risk of flight and dangerousness grounds.
11             On the risk of flight issue, the first thing that
12 you'll hear is that the Defendant -- law enforcement officers
13 attempted to execute an arrest warrant on the Defendant
14 yesterday morning at 6:00 a.m. first at his girlfriend's house.
15             When they arrived at his girlfriend's house, she told
16 them he wasn't there.  They then went to his mother's house,
17 which is the address that the Defendant has given as the
18 permanent address.
19             They went to the house.  The door was open.  The
20 Defendant was not in there.  The law enforcement agents were
21 able to determine that the Defendant had gone into a housing
22 project, where he spent the better part of the day until his
23 lawyer eventually negotiated a surrender with the Government.
24             You know, it's not clear exactly what the Defendant's
25 mindset was in that situation, but certainly, it suggests that

1    the Defendant was not trying to cooperate with law
2    enforcement's efforts to bring him into custody at a minimum.
3         The second thing on dangerousness, Your Honor, is the
4    charges here in this indictment are extremely serious.  In
5    addition to the fraud charges, which involve targeting numerous
6    innocent victims in which the Government believes totaled up to
7    and potentially in excess in terms of the conspiracy that the
8    gang engaged in of a million dollars, the Defendant is charged
9    with conspiracy to commit murder.
10        One piece of evidence that I think is particularly
11   illuminating here is a text message exchange from -- that the
12   Defendant had with other members of the gang back in August of
13   2021 in which he lays out in almost methodical detail his plan
14   to kill a family member of a known rival gang member,
15   specifically saying that he was going finish that person, and
16   then, he was going to go back to the hood and that he was
17   celebrate it.
18        And he noted that he was doing this really soon very
19   shortly after he had been arrested on the murder charge.
20   Arrested, excuse me, he had been released on the murder charge,
21   which I'll get back to in a second, that his counsel just
22   referenced.
23        And he talked about getting ready.  He talked about
24   going to the scene.  And apparently, the murder didn't happen
25   because one or more rival gang members, who were supposed to

1    show up to help in some way just didn't show up, which the
2    Defendant then chastised them for not doing.
3            In terms of the murder, I think there's some relevant
4    facts there that are important here.  The murder that his
5    counsel referenced was the 2019 murder of a 15 year old boy
6    named Samuel Joseph (phonetic).
7            That murder was committed or at least the shooting,
8    the actual shooting, was committed by the Defendant's older
9    brother, who's one of the charged co-defendants in the
10   indictment.
11           That shooting or the events leading up to that
12   shooting was precipitated by this Defendant's own violent
13   conduct.
14           Specifically, there's video of this Defendant
15   casually walking into a deli in Brooklyn, waiting in that deli
16   for several minutes until a known rival gang member appears on
17   the video, then charging out of the deli and attacking that
18   rival gang member, ambushing him with two glass bottles.  That
19   led to a fight in which Mr. Amilcar was stabbed in the leg.
20           This Defendant, this Mr. Amilcar, was stabbed in the
21   leg in which his brother, also named Martial Amilcar,
22   retaliated for by shooting that gang member's younger brother.
23           But certainly, Your Honor, even though the Defendant
24   was released from -- and not charged.  Ultimately charges
25   weren't pressed against him for that murder.  It was his

1  violent conduct, again, that began the series of events and
2  reflects truly the Defendant's willingness, not just his talk,
3  but his willingness to engage in significant violence.
4            And that demonstrated willingness to engage in
5  significant violence, his willingness to do so even after again
6  his discussion of doing so specifically even after having been
7  released on that case, combined with I think the evidence that
8  points to certainly his unwillingness at least to affirmatively
9  cooperate with law enforcement when he knows that they are
10 looking to arrest him, all of that shows that this Defendant
11 should not be released and that there are no conditions that
12 will assure his appearance and protect the community.
13           THE COURT:  All right, Mr. Storobin, do you want to
14 add anything on your end?
15           MR. STOROBIN:  Your Honor, may I just add one more
16 thing?
17           THE COURT:  Sure.  Go ahead.
18           MR. STOROBIN:  Your Honor, so as far as I know, my
19 client was not there at the time when the police showed up.
20 And I do know that when I reached out -- when he reached out to
21 me actually, and I called the -- once when I believe I spoke to
22 him, he was willing to surrender whenever it was good for them.
23           Then counsel called me.  He said that, no, I want it
24 to happen today.  And my client surrendered within the next
25 couple hours.  He was very cooperative as far as that goes.

1                    There's really no reason to believe that he was
2       having any second thoughts about surrendering because he did it
3       on the same day when he found out that they were looking for
4       him.
5                    As far as the 2001 text messages that counsel is
6       referring to, this is obviously the first time that I'm hearing
7       of them, but I would like to point out it's been three years
8       since that happened and nothing so far as I know happened to
9       that person based on their representation that counsel just
10      made.
11                   And as far as the 2019 homicide, my client was
12      charged in that case.  And the charges were dismissed in the
13      interest of justice.  Not just for murder, but he wasn't
14      convicted of anything, not even disorderly conduct.  Not
15      anything.
16                   So, to say that, oh, his actions precipitated this,
17      but if that's the case, there would have been at least
18      something, anything that would have stuck.  And in fact, there
19      wasn't despite the fact that the prosecution went on until
20      November of 2021 from February 2019.
21                   So, Your Honor, I understand that counsel's saying
22      these are very serious charges.  And they certainly -- most
23      certainly they are very serious.
24                   That said, the charges in the state, and I already
25      mentioned that were murder charges, they're not any less

1  serious than this.  In fact, they're more serious than this.

2  And my client showed up to Court every single time as did his

3  father for close to three years.

4           THE COURT:  All right, I have in front of me the

5  report from Pre-trial Services.  Does Pre-trial want to be

6  heard on the report or do you want to rest on your report as

7  well?

8           UNIDENTIFIED SPEAKER:  I -- Pre-trial will rest on

9  the report and concur with the Government's recommendation.

10          THE COURT:  Okay, I'm denying the request for bail at

11 this time.  The Defendant is free to make a more robust bail

12 package in the future, but based on the bail package presented

13 to the Court at this time, I'm not prepared to approve it.

14          I'm concerned about the risk of flight.  These

15 charges set forth in the Indictment are very serious.  And I

16 also note the Defendant's past criminal record as well.  So I

17 don't find the bail package to be robust enough to -- for me to

18 grant it at this time, okay?

19          MR. STOROBIN:  Okay.

20          THE COURT:  All right.  Anything else for the

21 Government today, Mr. Dugan?

22          MR. DUGAN:  Your Honor, the parties have a scheduled

23 court appearance in front of Judge Donnelly in this matter on

24 July 11th at 10:00 a.m.

25          The Government has moved or moves to exclude time in

1  the interest of justice between now and then in order to allow
2  the parties to begin exchanging discovery, to facilitate plea
3  negotiations, and in light of the complexity of this nine
4  Defendant case and the charges involved.
5              I think we've signed the OED form and given it to
6  Defense counsel.  I don't know what Defendant's position is at
7  this point.
8              THE COURT:  All right, Mr. Storobin?
9              MR. STOROBIN:  I mean, are we asking what date we
10 would be coming back, is that your question?
11             THE COURT:  So the scheduled date is July 11th at
12 10:00 a.m.  There's an application to exclude time.  I think
13 the waiver form was given to you.  Do you need a minute to
14 review it with your client and decide whether you want to
15 consent or not?
16             MR. STOROBIN:  That's fine.  We'll waive it for now.
17             THE COURT:  Okay.  All right, why don't you go ahead
18 and sign the form, have your client sign it as well, and bring
19 it up to the Court.  Do you need a copy?  Do you have it?
20             MR. STOROBIN:  Yes.
21             THE COURT:  All right.  If you need a minute, take
22 your time.
23         (Counsel confers with the Defendant)
24             THE COURT:  Okay, thank you, Felix.
25             All right, I have in front of me an application and

1    order of excludable delay.  Mr. Amilcar, there are a few
2    questions I need to ask you before I approve this request.
3             Have you had a chance to discuss this request with
4    your lawyer?
5             THE DEFENDANT:  Yes.
6             THE COURT:  Okay.  All right, and Mr. Storobin, do
7    you believe it's in your best -- in your client's best interest
8    to exclude time between now and July 11th?
9             MR. STOROBIN:  Correct, yes, Your Honor.
10            THE COURT:  All right, now Mr. Amilcar, your
11   signature's on this form, correct?
12            THE DEFENDANT:  You said what?
13            THE COURT:  Your signature's on this form?
14            THE DEFENDANT:  Yes.
15            THE COURT:  All right.  And do you know what you're
16   agreeing to by consenting to exclude time?
17       (Counsel confers with the Defendant)
18            THE DEFENDANT:  Yes.
19            THE COURT:  Okay.  I want to make sure you fully
20   understand what you are agreeing to by consenting to this
21   application, all right?
22            Under the Constitution and laws of the United States,
23   a defendant in a criminal case is entitled to a speedy trial.
24   Now specifically by statute, a trial must begin within 70 days
25   of the latter of the unsealing of the indictment or your first

1    appearance in the district of prosecution.

2            There's certain periods of time excluded from that

3    70-day calculation.  If trial does not begin within the 70

4    days, that could form the basis for a motion to dismiss the

5    charges against you.

6            By agreeing to exclude time from today, May 15th,

7    until July 11th, 2024 from the 70-day calculation, you are in

8    effect agreeing that the speedy trial clock will not be running

9    at all during that period of time.

10           Therefore, if I approve this exclusion and if you

11   later made a motion to dismiss the charges on the grounds that

12   you had not been brought to trial within 70 days, you would not

13   be permitted to take into account in your calculation the

14   period of time between today, May 15th and July 11th, 2024.  Do

15   you understand all that so far?

16           THE DEFENDANT:  Yes.

17           THE COURT:  All right.  Now if you choose to persist

18   in your not guilty plea and decide to go to trial, as you have

19   an absolute right to do, you can end up spending additional

20   time in jail awaiting trial.  Do you understand that?

21           THE DEFENDANT:  Yes.

22           THE COURT:  All right.  Understanding what I've just

23   said, do you still want me to approve this order to exclude

24   time?

25           THE DEFENDANT:  Yes.

```
 1                THE COURT:  All right, and are you making this
 2   decision voluntarily and of your own free will?
 3                THE DEFENDANT:  Yes.
 4                THE COURT:  All right, have any promises or threats
 5   been made to you to get you to agree to exclude time?
 6                THE DEFENDANT:  No.
 7                THE COURT:  Okay.  All right, I find that the
 8   Defendant's consent is knowing, intelligent, and voluntary and
 9   that excluding a specified period of time serves the public
10   interest.  And I'll go ahead and approve the order of
11   excludable delay.
12                All right, Mr. Storobin, anything for your client
13   today?
14                MR. STOROBIN:  No, Your Honor.
15                THE COURT:  All right, Mr. Dugan, anything else for
16   the Government?
17                MR. DUGAN:  No, Your Honor.  Thank you.
18                THE COURT:  All right, we are adjourned.  Have a nice
19   day, everyone.
20                MR. STOROBIN:  Okay, thank you.
21                THE CLERK:  Thank you.
22             (Proceedings concluded at 3:09 p.m.)
23
24
25
```

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Chris Hwang*
_____        September 18, 2024
Chris Hwang                     Date
Court Reporter